**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY | ) | 3:20-CV-00648 (SVN) |
| COMPANY as subrogee of Robert and | ) | |
| Kristine Paterson, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | March 28, 2023 |
| OMEGA FLEX, INC., | ) | |
| *Defendant.* | ) | |
| | ) | |

<u>**RULING AND ORDER ON DEFENDANT'S MOTION TO PRECLUDE AND MOTION**</u>
<u>**FOR SUMMARY JUDGMENT**</u>

Sarala V. Nagala, United States District Judge.

In this product liability action, Plaintiff State Farm Fire and Casualty Company, as subrogee of its insureds, Robert and Kristine Paterson (the "Patersons"), has alleged that Defendant Omega Flex, Inc. designed, supplied, and distributed defective corrugated stainless-steel tubing ("CSST") gas lines, and negligently failed to warn purchasers that the product was defective. According to Plaintiff, these flaws led to the product failing when lightning struck near the Patersons' residence, causing damage to the Patersons' real and personal property that Plaintiff's insurance policy with the Patersons covered.

Presently before the Court is Defendant's motion for summary judgment, arguing that Plaintiff's action is barred by the applicable statute of repose. Defendant further contends that, even if this action was not time-barred, Plaintiff has failed to provide admissible evidence showing that the product at issue was defective, that the defect caused the loss in question, or that Defendant failed to warn users of the purported defect. Further, Defendant moves to preclude the Court from considering certain expert evidence submitted by Plaintiff in opposition

to Defendant's motion.  For the reasons set forth below, the Court GRANTS both Defendant's motion for summary judgment and motion to preclude.

## I.     FACTUAL BACKGROUND

### A.   The Fire and the Product

The current litigation stems from a fire, caused by a lightning strike, on May 23, 2018, at the Patersons' home in Old Lyme, Connecticut.  Pl.'s Local Rule ("L.R.") 56(a)2 Statement ("St."), ECF No. 67-1, ¶ 2.[1]  Specifically, at around 4:00 a.m. that morning, Mr. Paterson was awakened by the sound of a lightning strike.  *Id.* ¶ 1.  Shortly thereafter, the Patersons smelled smoke and the smoke alarms in the home began going off.  *Id.* ¶ 6.  The Patersons began looking around the home and observed smoke coming from the basement.  *Id.* ¶ 7.  The Patersons also observed flames coming into the house through "HVAC distribution ports" in the floor of the house.  *Id.* ¶ 8.  Mr. Paterson poured water on the flames, then left the house.  *Id.* ¶ 10.  At approximately 4:20 a.m. that morning, the Old Lyme Fire Department was dispatched to the Patersons' home.  *Id.* ¶ 11.  Fire personnel arrived at the scene and remained there combating the fire for more than two hours.  *Id.* ¶ 12.

The Patersons' home is a two story, shingle style home with a full basement and attached three car garage.  *Id.* ¶ 13.  It was originally built in 1999, and the Patersons purchased it in 2011.  *Id.* ¶¶ 13, 14.  The House had a five-hundred-gallon underground propane tank that was installed in 2000.  *Id.* ¶ 17.  At the time of the fire, this propane tank supplied gas to a pool heater, a backup generator for the House, and a patio grill connection.  *Id.* ¶ 18.  The grill line was "capped," meaning it was not in use at the time of the fire, and had never been used by the Patersons.  *Id.*  This grill line ran underground from the propane tank to a connection below the Patersons' hot tub, then entered the House in the basement, transitioned to the CSST, and exited

---

[1] Where facts are undisputed, the Court cites only to Plaintiff's Local Rule 56(a)2 statement.

to a secondary regulator on the patio.  *Id.* ¶ 19.  Based on how this system was set up, the gas in the CSST inside the home had a resting pressure of 10 pounds per square inch ("psi").  *Id.* ¶ 21. While the parties agree the CSST was pressurized to 10 psi, they disagree as to whether such pressure exceeded the "permissible pressure" for such a pipe.  *See id.* ¶ 22; Def.'s L.R. 56(a)1 St., ECF No. 63-2, ¶ 22.

Regardless, the parties agree that, after the fire, an investigation took place.  During this investigation, a small hole was found in the CSST grill line.  Pl.'s L.R. 56(a)2 St. ¶ 23.  Plaintiff contends that this section of CSST, and the hole it contained, caused the fire.  *Id.* ¶ 24.  The CSST was a product known as TracPipe CSST, which was manufactured by Defendant.  *Id.* ¶ 25. TracPipe is a flexible pipe that is sold in long continuous lengths and used to distribute either natural gas or propane throughout a structure.  *Id.* ¶ 33.  TracPipe is often used in lieu of, or in conjunction with, traditional black iron pipe.  *Id.* ¶ 34.  This is because black iron pipe, unlike TracPipe, must be installed in straight lengths connected by threaded fittings to extend the length of the pipe, or change the direction of the pipe.  *Id.* ¶ 35.  TracPipe, on the other hand, can simply be bent by hand to accommodate a change in direction.  *Id.* ¶ 36.  Thus, TracPipe requires only two fittings, one at the beginning and one at the end.  *Id.*  Defendant believes that this reduction in the number of fittings to install TracPipe reduces the risk of gas leaks, making TracPipe a safer product.  Def.'s L.R. 56(a)1 St. ¶ 38.  Plaintiff, unsurprisingly, disputes that this makes TracPipe a safer product than traditional black iron piping.  Pl.'s L. R. 56(a)2 St. ¶ 38.

What is not disputed is that TracPipe can be installed approximately 75% faster than traditional black iron pipe, making it far less expensive.  *Id.* ¶ 39.  Another benefit to TracPipe is that, because it can flex and bend without breaking, it is less prone to leaking during a flood, earthquake, tornado, or other similar event.  *Id.* ¶ 40.  CSST products, and TracPipe in particular,

have been independently tested and found to be a "suitable" distribution method of gas within a structure, and are recognized by all fifty states and the National Model Fuel Gas Code as an approved gas piping system. *Id.* ¶ 46.

Relevant here, the section of TracPipe was connected to a fitting that contained a date code of "0143." *Id.* The date codes on these fittings follow a specific protocol. The first two digits are the year in which the fitting was manufactured and the last two are the week of that year. *Id.* ¶ 26. Thus, a fitting with the code 0143 was manufactured in the forty-third week of 2001, in October of 2001. *Id.* ¶ 27.

The exact date the TracPipe was installed at the House is unknown. In July of 2000, shortly after the House was originally constructed, a permit was obtained to install the propane tank and the gas piping to connect the tank to the pool heater. *Id.* ¶ 29. No permit, or permit application, has been located for the installation of the CSST, however. *Id.* ¶ 30. Plaintiff believes no permits were located because the TracPipe was installed during the original construction of the House. *Id.* ¶ 31. Regardless, the parties agree that certain components of the relevant system were manufactured as early as 2000 and none of the components were manufactured later than 2005. *Id.* ¶ 32.

### B. Warnings and Instructions

Defendant published specific installation requirements for TracPipe in its Design and Installation Guide. *Id.* ¶¶ 48–49. The parties agree that the applicable version of the Design and Installation Guide is a version dated April of 2001 (the "Guide"). *Id.* ¶ 53. The Guide provided that TracPipe "must be used in conjunction with state and local building codes" and that, "in the absence of local codes, installation must be in accordance with the current edition of national fuel gas code, ANSI Z223.1/NFPA." *Id.* ¶ 55. The first page of the Guide further provided that

TracPipe was only to be "installed by a qualified person who has been trained or otherwise qualified through the TracPipe Gas Piping Installation Program." *Id.* ¶ 57. The Guide went on to make clear that the "installation instructions and procedures contained in this Design Guide must be strictly followed in order to provide a safe and effective fuel gas piping system or system modification." *Id.* ¶ 60. There was also a large warning label in the Guide that provided: "if this system is used or installed improperly, fire, explosion, or asphyxiation may result." *Id.* ¶ 61.

The Guide further noted that TracPipe is "listed by CSA International for fuel and gas use in the USA and Canada for all pressures up to 5 psi." *Id.* ¶ 62. This limitation regarding psi was repeated under a section titled "**PRECAUTIONS.**" *Id.* ¶ 63. Defendant contends that, because the TracPipe in the Patersons' home had a psi of 10, it was improperly installed in violation of the National Fuel Gas Code, manufacturer instructions, and the local code. Def.'s L.R. 56(a)1 St. ¶ 65. Plaintiff contests that TracPipe could only handle 5 psi, but the evidence used to refute this is testimony that relies on a 2007 manual, not the 2001 version the parties agree is applicable. Pl.'s L.R. 56(a)2 St. ¶ 65; ECF No. 67-10, Zazula Dep. Tr., ECF No. 67-10, at 19:2–20:15.

In addition to the limitation on pressure, the Guide contained warnings related to bonding and grounding. Pl.'s L.R. 56(a)2 St. ¶ 68. Specifically, the Guide made clear that the TracPipe was not to be used as a grounding conductor or electrode, and that, instead, the TracPipe must be bonded to a building's grounding electrode. *Id.* ¶¶ 69–70. The Guide then provided instructions for how to bond the TracPipe to the appropriate surface to minimize risks. *Id.* ¶ 71. The Guide also contained a diagram visually instructing the user how to install and use the TracPipe. *Id.* ¶ 72.

TracPipe was to be bonded in order to help prevent a phenomenon known as electrical arcing. *Id.* ¶ 73. Although the parties do not appear to dispute what an electrical arc is, they do not supply a basic definition of the term; Merriam-Webster provides that, in this context, an arc is "a sustained luminous discharge of electricity across a gap in a circuit or between electrodes." *Arc*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/arc (last accessed March 28, 2023). Bonding is effective at reducing the risk of an arcing event because it reduces the voltage difference between the TracPipe and other metal structures to below the difference required to initiate an arc. Pl.'s L.R. 56(a)2 St. ¶ 74. Bonding of the type described in the Guide is required to significantly reduce the likelihood of arcing in the event of a lightning strike. *Id.* ¶ 75. Further, even if the bonding does not reduce the voltage enough to prevent an arc entirely, it reduces the risk that the arc will cause a hole in the TracPipe. *Id.* ¶¶ 76–77.

Despite these warnings, the TracPipe installed in the House was not correctly bonded. *Id.* ¶ 78. Defendant asserts that this lack of bonding means the TracPipe was incorrectly installed, Def.'s L.R. St. 56(a)1 St. ¶¶ 81–82, though Plaintiff disputes this assertion, Pl.'s L.R. 56(a)2 St. ¶¶ 81–82. Defendant also asserts that there were several state and local codes that specified how and when TracPipe could be used, and that the Patersons' home was not in compliance with those rules and regulations. Def.'s L.R. 56(a)1 St. ¶¶ 84–93. While Plaintiff admits that there were several rules and regulations on the topic, Pl.'s L.R. 56(a)2 St. ¶¶ 84–90, Plaintiff disputes Defendant's characterization of certain specific rules or regulations, *id.* ¶¶ 91–93. To the extent these disputes are necessary to the Court's analysis, they are discussed in further detail below.

C. <u>Investigation Following the Incident</u>

After the fire, Defendant retained an expert to investigate the cause of the incident. *Id.* ¶ 94. The investigation concluded that the hole in the TracPipe could have been formed only by electrical arcing between the TracPipe and another metal object. *Id.* ¶ 97. The amount of energy required to form the hole at issue is disputed, but it is undisputed that the electricity was supplied by a lightning strike near the home. *Id.* ¶ 100. Where exactly the fire started, how it spread, and precisely what generated the spark for the fire is hotly contested, *id.* ¶¶ 102–15, but the parties agree that there was a lightning strike near the House, that lightning can cause fires, and that a single lightning strike can ignite multiple fires, *id.* ¶¶ 117–20.

## II.     DEFENDANT'S MOTION TO PRECLUDE

In order to understand Defendant's motion to preclude, one must understand the basic foundation of Defendant's motion for summary judgment. In support of its motion for summary judgment, Defendant contends, among other things, that Plaintiff has no evidence that the alleged defect in the TracPipe caused the fire in question and that, in any event, the action is barred by the statute of repose. In opposition to the motion for summary judgment, Plaintiff submitted affidavits from two experts, Joseph Cristino and Michael Zazula, that purport to rebut these assertions. Despite that both Cristino and Zazula were previously disclosed as experts and submitted expert reports, Defendant argues that certain specific information contained in their affidavits in opposition to summary judgment was never disclosed. Thus, Defendant moves to preclude consideration of portions of their affidavits as expert testimony that was not timely disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2). For the reasons discussed below, the Court GRANTS Defendant's motion.

A. The Opinions

The affidavits submitted in opposition to Defendant's motion for summary judgment are not long, but according to Defendant, contain expert opinions that were not previously disclosed.[2]

The first allegedly-undisclosed opinions appear in the affidavit of Joseph Cristino submitted in support of Plaintiff's opposition to Defendant's summary judgment motion.  As background, when Cristino was initially disclosed as an expert, his report did not opine as to whether, had the CSST been bonded, the arcing still would have occurred.  Defendant questioned Cristino at his deposition about whether Cristino had tested whether, had the system been bonded, the arcing event still would have occurred; Cristino said he had not.  Cristino Dep. Tr., ECF No. 69-3, at 29:14–30:4.  Cristino agreed, however, that that testing could be conducted through a "SPICE" model, *id.* at 30:5–7, which is modeling that can be performed to determine whether an electrical arcing event would have occurred even if the CSST had been bonded.  Defendant's expert then conducted SPICE testing, and Defendant submitted the results of such testing, which it contends showed that the arcing event would not have occurred had the CSST been properly bonded, in support of its motion for summary judgment.  *See* Kytomaa Expert Report, ECF No. 63-3 at 71–74.

In opposition to Defendant's summary judgment motion, Plaintiff filed a new affidavit from Cristino that contains, among other things, analysis of a report from a company called Advanced Fusion Systems addressing, and purporting to refute, the SPICE testing done by Defendant.  Cristino attached the Advanced Fusion Systems report to his new affidavit.  *See* ECF No. 67-7 at 74–82.  Specifically, Advanced Fusion Systems claims to have run fourteen SPICE

---

[2] The two affidavits also contain other information that Defendant does not argue was untimely disclosed.  Thus, the Court's analysis of the motion to preclude discusses only those assertions Defendant believes were untimely disclosed and should not be considered.

tests, including the same tests run by Defendant's experts assuming the CSST was grounded, as well as additional tests assuming the CSST was ungrounded. ECF No. 67-7 ¶ 9. This testing found that none of the simulations, ungrounded or otherwise, resulted in an electrical arcing event. *Id.* ¶¶ 8, 9. Cristino concludes that this means the SPICE testing must be inaccurate, as the parties agree that an arcing event did indeed occur at the Patersons' home. *Id.* ¶ 10. Neither the Advanced Fusion Systems report, nor Cristino's analysis of it, was disclosed prior to the filing of Plaintiff's opposition to summary judgment.[3]

In addition to the newly disclosed opinions in the Cristino affidavit, Defendant objects to paragraphs four and five of Zazula's affidavit, contained in ECF No. 67-9. Paragraph four states, in its entirety, "the useful life of corrugated stainless-steel tubing ('CSST') is in excess of 20 years." ECF No. 67-9 ¶ 4. This opinion is presented without justification or context and appears to have been inserted solely to rebut Defendant's assertion that Plaintiff's claims are time-barred.[4] Additionally, paragraph five notes that Zazula has been involved in three prior cases where TracPipe failed despite being properly installed and, presumably, bonded. *Id.* ¶ 5. While Zazula provides the names of the cases (*Wingard v. TracPipe*, *Tomlinson v. TracPipe*, and *Chuma v. TiteFlex*), he provides no further information, including any case numbers, where the prior cases took place, what the outcomes were, or how the facts of these cases are similar to, or different from, the instant case. Defendant argues that neither of these opinions was ever disclosed or discussed by Zazula prior to Plaintiff's opposition to Defendant's summary judgment motion. Therefore, according to Defendant, neither the new Cristino nor Zazula

---

[3] As neither the Advanced Fusion System report, nor Cristino's analysis of the report, were previously disclosed, and the outcome for both is the same, the Court will analyze both collectively and refer to them as Cristino's affidavit.

[4] The Court will address the timeliness issue more fully in its discussion of Defendant's motion for summary judgment.

opinions should be considered by the Court when examining Defendant's motion for summary judgment.

        B.  <u>Legal Standard</u>

Rule 26(a)(2) requires that a party who intends to introduce expert testimony at trial disclose the identity of their expert witness to the opposing party. Fed. R. Civ. P. 26(a)(2)(A). This disclosure must include a report that contains a complete statement of the opinions of the witness, the facts used to form those opinions, any exhibits that will be used to summarize the opinions, the witness' qualifications including publications from the last ten years, a list of other cases the witness testified in during the last four years, and a statement of what compensation the witness is receiving in exchange for his or her testimony. Fed. R. Civ. P. 26(a)(2)(B). This disclosure must be made in accordance with the timing and sequencing ordered by the Court. Fed. R. Civ. P. 26(a)(2)(D). If a party does not disclose an expert or information in accordance with Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). The reason for this rule is very simple: "to prevent the practice of sandbagging an adversary with new evidence." *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:18-CV-00260 (KAD), 2022 WL 280180, at *5 (D. Conn. Jan. 31, 2022).

In order to determine if expert testimony should be precluded because of improper disclosure, the Second Circuit employs a four-part test. The factors considered are: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).

C.  Discussion

Here, Plaintiff concedes the information in the Cristino and Zazula affidavits that Defendant seeks to preclude was not timely disclosed.  A review of the record confirms this concession.  The final scheduling order provided that Plaintiff was required to disclose its experts and their reports no later than November 28, 2021.  ECF No. 47.  Plaintiff disclosed expert opinions of Cristino and Zazula by that deadline, but not the particular opinions Defendant now challenges.  Defendant was then required to, and did, disclose its experts by January 30, 2022.  *Id.*  Plaintiff did not serve any supplemental reports to contradict the findings in Defendant's expert reports, as permitted by Rule 26(a)(2)(D)(ii), and expert discovery closed on March 31, 2022.  *Id.*  Nonetheless, Plaintiff claims the Court should still consider the affidavits for various reasons.  As discussed below, each of Plaintiff's arguments fails.

First, with respect to both affidavits, Plaintiff appears to argue that because the affidavits at issue are being offered pursuant to Rule 56 in opposition to a motion for summary judgment, they are somehow immune to the disclosure requirements of Rule 26(a).  The express language of the Federal Rules of Civil Procedure forecloses this argument.  Specifically, Rule 37(c)(1) provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or harmless."  Rule 26(a), in turn, governs expert disclosures.  Thus, it is clear that, where expert witnesses and opinions are not properly disclosed, they may not be submitted in support of, or opposition to, a motion for summary judgment, unless the failure to disclose was substantially justified or harmless.  Plaintiff does not argue that its failure to disclose the expert opinions at issue was substantially justified or harmless and, indeed, provides no legal support whatsoever for its argument that the

procedural posture of its submission alters the Rule 37 analysis.  Therefore, this argument is entirely unpersuasive.[5]

The Court now turns to the remaining arguments, including the applicability of the *Softel* factors.  The Court first examines how the *Softel* factors apply to Cristino's affidavit, and his newly disclosed opinion regarding SPICE testing.  First, Plaintiff provides no explanation for its failure to conduct this SPICE testing and disclose Cristino's opinion on the topic prior to its summary judgment briefing.  Instead, Plaintiff argues that opinions generally related to the efficacy of bonding are not new and were discussed at Cristino's deposition.  This argument misconstrues Defendant's contentions.  Defendant argues specifically that the SPICE testing and attendant analysis Cristino relies upon were not disclosed prior to the motion for summary judgment.  It is this evidence from Cristino, and this evidence alone, that Defendant seeks to prelude.  As Plaintiff has provided no explanation as to why this information was not provided prior to summary judgment, the first factor counsels in favor of preclusion.  *Kalra*, 2022 WL 280180, at *8 (where party offering undisclosed expert affidavit in opposition to summary judgment provides no explanation for the lack of disclosure, the first factor weighs in favor of preclusion).

As to the second factor, the importance of the new testimony, Plaintiff itself argues that the information related to the SPICE testing is entirely unnecessary for its case in chief.  ECF No. 71 at 17.  Based on Plaintiff's express representation that the evidence is unnecessary, the Court finds the second factor also counsels in favor of preclusion.

---

[5] Plaintiff also spends a large part of its opposition arguing that Zazula's opinion regarding the useful life of CSST is not a matter on which expert testimony is necessary at all, contending that the topic is well within the ken of an average juror.  This argument is not relevant to the question of whether to preclude the opinion that was submitted but, rather, is relevant to whether Plaintiff has presented enough evidence to survive summary judgment.  Thus, the Court will address this argument in its analysis of Defendant's motion for summary judgment below.

The third factor, relating to prejudice to the opposing party, also weighs in favor of excluding the testimony. Despite Plaintiff's arguments that Defendant had the opportunity to depose the experts at issue, when Defendant did so Cristino expressly disavowed having done SPICE testing. The fact that Defendant was able to question Cristino on the "efficacy of bonding" is not a substitute for Defendant being able to cross-examine him on information related to specific SPICE testing results. To now proffer evidence of SPICE testing that purports to refute Defendant's evidence, despite previously expressly denying having such evidence, is extremely prejudicial. To put it simply, "the prejudice inflicted in situations such as this is precisely why the rules are designed to avoid trial by ambush." *Kalra*, 2022 WL 280180, at *8. Thus, the third factor favors preclusion of the information.

Finally, the Court examines the possibility of a continuance. Here, as in *Kalra*, Plaintiff elected to disclose certain expert discovery for the first time in opposition to Defendant's motion for summary judgment. *See id.* As discussed above, all discovery, including expert discovery, was to be completed by March 31, 2022. The fact that discovery in the instant matter has long since closed "weighs strongly against any possibility of a continuance." *Colon v. Linchip Logistics LLC*, 330 F.R.D. 359, 368 (E.D.N.Y. 2019); *Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 CIV. 3698 LAP, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (discovery being closed for four months prior to disclosure of expert weighed strongly against granting a continuance). It is not as simple as Plaintiff suggests to merely reopen discovery for an additional deposition of Cristino. *See* ECF No. 71 at 18. Motions for summary judgment have already been submitted here, and Defendant relied upon the expert discovery that has already taken place. Were the Court to allow the information in Cristino's affidavit, and an additional deposition of Cristino, it would also have to allow Defendant time for its expert to review and

13

rebut these new assertions, allow Plaintiff the opportunity to depose Defendant's expert on this new information, allow Defendant to resubmit its motion for summary judgment, and allow Plaintiff to once again file an opposition. *See Kalra*, 2022 WL 280180, at *8.  All of this would immensely delay resolution of this case.  Thus, the fourth factor weighs in favor of precluding the previously undisclosed Cristino opinion.

As for the untimely disclosure issue with the Zazula affidavit, the analysis proceeds in essentially the same way as the analysis related to the Cristino affidavit.  Plaintiff has presented no additional arguments for the Zazula affidavit, and thus each of the factors comes out the same way.  This favors preclusion of the information.

The Zazula affidavit presents a further issue also supporting preclusion:  it provides no logic or rationale for its opinions.  "An expert's opinions that are without factual basis and are based on speculation or conjecture are [] inappropriate material for consideration on a motion for summary judgment."  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008).  Here, Zazula's opinions can only be said to be speculative and without factual basis.  With respect to paragraph four, Zazula provides no information on how he arrives at the useful safe life of TracPipe.  He does not reference any material in his report or deposition, nor does the Court's review of this material reveal a reference to the useful safe life of the product.  Simply stating something as fact does not make it so, and the Court cannot consider an expert opinion based on nothing.  *Id.*

Paragraph five, concerning three other cases in which Zazula was involved where TracPipe failed despite being properly installed, presents a somewhat closer call, although ultimately demands the same outcome.  While the affidavit does list the specific cases it purports to reference, it does so by name only.  It provides no way for Defendant, or the Court, to

reference or read these previous cases.  Moreover, it does not detail why the TracPipe failed in those cases or how those cases are similar, or different, to the instant case.  Instead, it simply states that Zazula has been involved in prior cases where TracPipe failed despite proper installation.  ECF No. 67-9 ¶ 5.  Unfortunately for Plaintiff, "an expert's conclusory opinions are [] inappropriate."  *Major League Baseball Props., Inc.*, 542 F.3d at 311.  Thus, paragraph five of the Zazula affidavit is not properly supported and will not be considered by the Court.

*   *   *

In sum, Plaintiff has provided no reason for its failure to disclose these expert opinions in the normal course.  Courts in the Second Circuit regularly prohibit reliance on an expert affidavit at summary judgment where the expert or his report was not timely disclosed.  *See Caruso v. Bon Secours Charity Health Sys., Inc.*, 703 F. App'x 31, 33 (2d Cir. 2017) (summary order) (affirming preclusion of expert reports from consideration in opposition to summary judgment where the experts were not previously disclosed); *Kalra*, 2022 WL 280180, at *8; *Colon*, 330 F.R.D. at 368; *Spotnana, Inc.*, 2010 WL 3341837, at *2.  Further, where an expert's opinion is not properly supported, the Court is not to consider it.  *Major League Baseball Props., Inc.*, 542 F.3d at 311.  Defendant has demonstrated that each of the opinions at issue were either not disclosed, not properly supported, or both.  Thus, the Court will not consider them.  Cristino's opinions regarding the SPICE testing and Zazula's opinions regarding the useful safe life of TracPipe, as well as his prior work on cases where TracPipe allegedly has failed despite correct installation, will not be considered by the Court in determining the outcome of Defendant's motion for summary judgment.

III.     **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Turning to Defendant's motion for summary judgment, the Court agrees with Defendant that Plaintiff's claims are barred by the applicable statute of repose.

A.   Legal Standard

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477

U.S. at 324).  The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  *Anderson*, 477 U.S. at 249.  If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).  "[O]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## B.  Statute of Repose

Defendant argues that because the present action was commenced more than ten years after Defendant lost control of the product at issue, it is barred by the statute of repose. Connecticut General Statutes § 52-577a(a) provides in part that no product liability action under the Connecticut Product Liability Act ("CPLA"), Connecticut General Statutes § 52-572m, may be brought "later than ten years from the date that the party last parted with possession or control of the product."  *Kelemen v. Rimrock Corp.*, 542 A.2d 720, 723 (Conn. 1988) (recognizing that § 52-577a(a) "unequivocally states that no action can be brought later than ten years from the date that the party last parted with possession or control of the product" (internal quotation marks and emphasis omitted)).  It is undisputed that the House was originally constructed in 1999, and the underground propane tank was constructed in 2000.  Pl.'s L. R. 56(a)1 St. ¶¶ 13, 17.  Further, the parties agree that the components of the gas system at issue were manufactured no later than

2005, and neither party argues that the CSST remained in Defendant's possession for any significant amount of time after it was manufactured.  Therefore, it appears that Defendant last parted with possession or control of the TracPipe at issue no later than 2005, and, thus, any action under the CPLA was required to have been brought by 2015 at the latest.  Because the instant complaint was filed on May 11, 2020, Compl., ECF No. 1, it is untimely.  As a result, unless Plaintiff can show this action fits an exception to the statute of repose, the claims asserted in this suit are time-barred.

One such exception to the statute of repose is that "the ten-year limitation provided for in subsection (a) shall not apply to any product liability claim brought by a claimant who can prove that the harm occurred during the useful safe life of the product."  Conn. Gen. Stat. § 52-577(a)(c).  The useful safe life of a product "expires when it can no longer be reasonably expected to function as intended."  *Hubbard-Hall, Inc. v. Monsanto Co.*, 98 F. Supp. 3d 480, 485 (D. Conn. 2015).  In determining whether the useful safe life of a product has ended, the "trier of fact" is instructed to consider, among other things:

> (1) The effect on the product of wear and tear or deterioration from natural causes; (2) the effect of climatic and other local conditions in which the product was used; (3) the policy of the user and similar users as to repairs, renewals and replacements; (4) representations, instructions and warnings made by the product seller about the useful safe life of the product; and (5) any modification or alteration of the product by a user or third party.

Conn. Gen. Stat. § 52-577a(c).  Defendant argues that Plaintiff has offered no evidence to support that the TracPipe at the House was within its useful safe life when the fire occurred; that is, it argues there is an absence of evidence to support Plaintiff's case, warranting summary judgment in its favor.  Plaintiff, on the other hand, argues simply that the useful safe life of a product is a question of fact for the jury.

The statute of repose requires that the "claimant prove the harm occurred during the useful life of the product." Conn. Gen. Stat. § 52-577(a)(c). On a motion for summary judgment, the moving party can meet its burden by "pointing out an absence of evidence to support the non-moving party's case." *PepsiCo, Inc. v. Coca-Cola Co*., 315 F.3d 101, 105 (2d Cir. 2002). Once this burden is met, the non-movant, here Plaintiff, must present "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co*., 654 F.3d 347, 358 (2d Cir. 2011).

Defendant argues that Plaintiff has failed to offer evidence showing that the TracPipe was within its useful safe life at the time of the incident. In its opposition, the only evidence Plaintiff offers that the TracPipe at issue was within its useful life is the single line, presented without explanation or support, in Zazula's affidavit. As discussed above, however, the Court will not be considering this line in connection with the present motion. At oral argument, when presented with the possibility the Court would not consider Zazula's opinion, Plaintiff steadfastly argued that expert testimony was not necessary on this issue and that the jury would be fully capable of determining the useful safe life of the CSST on its own. While the Court is skeptical of this argument, it nevertheless misses the point. Plaintiff has presented no evidence, expert or otherwise, that indicates the CSST in this case was within its useful safe life. For instance, Plaintiff has presented no testimony, documents, affidavits, or responses to interrogatories from any person, lay or expert, that could demonstrate the CSST was within its useful safe life at the time of the fire.

Instead, at oral argument, Plaintiff appealed to the common sense of the Court and the jury in arguing that the product was within its useful life. But common sense does not relieve a party of its obligation to produce at least some evidence of an element of its claim in order to

withstand summary judgment.  *See Holdmeyer v. Veneman*, 321 F. Supp. 2d 374, 383 (D. Conn. 2004) (finding conclusory assertions and a plaintiff's "common sense" are not evidence sufficient to overcome a defendant's motion for summary judgment), *aff'd sub nom. Holdmeyer v. Dep't of Agric.*, 146 F. App'x 535 (2d Cir. 2005) (summary order); *Celotex*, 477 U.S. at 322–23.  Plaintiff has failed to present any evidence at all that the product at issue was within its useful safe life at the time the fire took place.  It is Plaintiff's burden to demonstrate the product was within its useful safe life in order to avoid the statute of repose and maintain an action under the CPLA.  It has failed to do so, and no reasonable jury could conclude otherwise on the record before the Court.  Thus, all claims brought pursuant to the CPLA must be dismissed as barred by the statute of repose.[6]

Finally, the Court briefly discusses Plaintiff's argument that, in addition to its failure to warn claim under the CPLA, it also brings a "common law post-sale failure to warn" claim.  The parties agreed at oral argument that this claim, too, is subject to the CPLA's statute of repose.  Therefore, it fails for the same reasons.  This holding is further supported by the text of the statute itself.  Under the CPLA, a "product liability claim" is defined to include, "breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent."  Conn. Gen. Stat. § 52-572m(b).  Moreover, the statute of repose clearly states that "no product liability claim, as defined in section 53-572(m)" may be brought outside of the time restrictions contained therein.  Conn. Gen. Stat. § 52-577a(a).  Therefore, by the clear text of the statute, a negligent failure to warn claim is subject to the same statute of repose as all other claims brought under the CPLA.

___

[6] The Court notes that despite the statute of repose listing five specific considerations for the trier of fact to consider in determining whether a product was within its useful safe life, the only factor arguably addressed by either party is whether the product was "modifi[ed] or alter[ed] . . . by a user or third party"; specifically, relevant to this factor, Defendant argues that the CSST was improperly installed.  Plaintiff does not discuss this issue.  Defendant is correct that the undisputed evidence indicates the product was not installed according to the manufacturer's instructions, but it is unclear to the Court whether that truly constitutes a "modification or alteration" as outlined in the statute. Regardless, the Court need not determine the issue for, as discussed, Plaintiff has failed to present any evidence demonstrating the product was within its useful safe life.

Plaintiff's failure to demonstrate the product at issue here was within its useful safe life is the demise of this claim, too.

Because each of Plaintiff's claims are barred by the statute of repose, the Court need not, and does not, address any of Defendant's additional arguments.

## IV.    CONCLUSION

For the reasons discussed above, Defendant's motion to preclude and motion for summary judgment are GRANTED.  The Clerk of Court is directed to enter judgment in favor of Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 28th day of March, 2023.

_/s/ Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE